Case 5:19-cv-01454-OLG   Document 9   Filed 05/10/21   Page 1 of 11

FILED
May 10, 2021
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____ JU
                      DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| GEORGE MUNOZ, JR.,<br>TDCJ No. 02147934,<br><br>          Petitioner,<br><br>v.<br><br>BOBBY LUMPKIN,[1] Director,<br>Texas Department of Criminal Justice,<br>Correctional Institutions Division,<br><br>          Respondent. | §<br>§<br>§<br>§<br>§<br>§    Civil No. SA-19-CA-01454-OLG<br>§<br>§<br>§<br>§<br>§<br>§ |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Petitioner George Munoz, Jr.'s Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1), Respondent Bobby Lumpkin's Answer (ECF No. 6), and Petitioner's Reply (ECF No. 8) thereto. Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d). Petitioner is also denied a certificate of appealability.

### I. Background

The facts of Petitioner's case were accurately summarized by the Texas Fourth Court of Appeals on direct appeal:

> On the afternoon of June 16, 2013, at approximately 5:00 p.m., [Petitioner] was driving a silver Toyota Corolla in the right-hand lane of westbound Culebra Road in San Antonio. [Petitioner] waved down Steven Vargas, the driver of a silver Dodge Charger in the left-hand lane traveling the same direction as [Petitioner], and the two men began to argue through the

---

[1]    The previous named Respondent in this action was Lorie Davis. On August 10, 2020, Bobby Lumpkin succeeded Davis as Director of the Texas Department of Criminal Justice, Correctional Institutions Division. Under Rule 25(d) of the Federal Rules of Civil Procedure, Lumpkin is automatically substituted as a party.

windows of their vehicles. Both vehicles stopped side by side at the traffic light at the intersection of Culebra and 36th Street. [Petitioner] brandished a firearm and aimed it at Vargas's girlfriend, who was sitting in the passenger seat. Vargas exited his vehicle and began walking toward [Petitioner]'s vehicle, attracting the attention of Officer Israel Escareno, whose patrol vehicle was stopped on 36th Street at the same intersection, i.e., perpendicular to the street where [Petitioner] and Vargas were stopped. Upon noticing the unfolding confrontation, Officer Escareno activated his overhead lights and made a left turn on to Culebra, stopping his patrol car directly in front of [Petitioner]'s vehicle in order to assess and attempt to de-escalate the situation. Before Officer Escareno could exit his patrol car, [Petitioner] drove forward and hit the front bumper of the patrol car. [Petitioner] then reversed his vehicle, drove around the front of the patrol car, and quickly sped away.

A relatively short, but high-speed chase ensued. Officer Escareno called for backup and pursued [Petitioner]'s vehicle down westbound Culebra. Officer Escareno testified that the chase reached speeds up to 80-90 miles per hour. Within a short period of time (less than one minute), [Petitioner] failed to keep his vehicle in his lane while navigating a curve and drifted into the oncoming traffic lanes. [Petitioner]'s vehicle showed no signs of an attempt to brake before it crashed into an oncoming white Chevy Caprice at a high rate of speed. Seven-year-old Edward Lindsay, who was a passenger in the vehicle, suffered fatal injuries and was pronounced dead at the scene. Immediately after the collision, Officer Escareno approached the damaged vehicles and saw [Petitioner] reaching for a firearm. Officers disarmed [Petitioner] and he was taken into custody. [Petitioner] was indicted for the murder of Edward Lindsay committed during the course of the felony of evading arrest. [Petitioner] pled not guilty and proceeded to a jury trial.

\* \* \*

The jury found [Petitioner] guilty of felony murder, with an affirmative finding that the motor vehicle was used as a deadly weapon. *See* TEX. PENAL CODE ANN. § 19.02(b)(3) (West 2011). [Petitioner] pled true to the State's enhancement allegation based on a prior felony conviction, which increased the punishment range to 15 to 99 years, or life, imprisonment. The trial court sentenced [Petitioner] to life imprisonment.

*Munoz, Jr. v. State*, 533 S.W.3d 448, 451-52 (Tex. App.—San Antonio, Jan. 4, 2017, pet.

ref'd); (ECF No. 7-3 at 1-4).

Petitioner appealed to the Texas Fourth Court of Appeals which affirmed the conviction

in a published opinion. *Id*. The Texas Court of Criminal Appeals then refused his petition for

discretionary review on July 26, 2017. *Munoz, Jr. v. State*, No. 0280-17 (Tex. Crim. App. 2017); (ECF No. 7-11). Thereafter, Petitioner challenged the constitutionality of his conviction and sentence by filing an application for state habeas corpus relief. *Ex parte Munoz, Jr.*, No. 90,171-01 (Tex. Crim. App.); (ECF No. 7-34 at 5-54). Based on the findings of the state habeas trial court, however, the Texas Court of Criminal Appeals eventually denied the application without written order on August 21, 2019. (ECF No. 7-29).

Petitioner initiated the instant federal proceedings on December 16, 2019. (ECF No. 1). In the petition, Petitioner raises the same allegations that were rejected by the Texas Court of Criminal Appeals during his state habeas proceedings—namely, that his trial counsel rendered ineffective assistance by failing to call witnesses at both the guilt/innocence and punishment phase of trial. Respondent filed an Answer to the § 2254 petition (ECF No. 6) to which Petitioner replied (ECF No. 8). As such, this case is now ripe for adjudication.[2]

## II. **Standard of Review**

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA. 28 U.S.C.A. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This intentionally difficult

---

[2]  In his Answer, Respondent does not address the merits of the allegations raised by Petitioner in his § 2254 petition, but instead argues that the petition is barred from federal habeas review by AEDPA's one-year statute of limitations. Petitioner, in reply, appears to make a strong argument for the application of equitable tolling. Nevertheless, given that the underlying allegations raised in Petitioner's § 2254 petition lack merit, this Court makes no determination regarding the timeliness of Petitioner's § 2254 petition or whether equitable tolling should apply.

standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *Richter*, 562 U.S. at 102. Instead, a petitioner must show that the decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

### III. <u>Merits Analysis</u>

In one short paragraph, Petitioner alleges that his trial counsel failed to provide effective assistance at his murder trial. Specifically, Petitioner contends trial counsel failed to: (1) call witnesses to demonstrate that Steven Vargas was violent, known to carry a gun, and was chasing

4

Petitioner, and (2) present psychological evidence at the punishment phase of trial. As discussed below, both of these allegations were raised and rejected during Petitioner's state habeas proceedings, and Petitioner fails to demonstrate the state habeas court's rejection of these allegations was either contrary to, or an unreasonable application of, Supreme Court precedent.

A.  **Petitioner's Claims are Conclusory**

Initially, the Court notes that Petitioner, despite being represented by counsel, has presented his allegations in a single, conclusory paragraph without any supporting argument or evidence. (ECF No. 1 at 5). While he provided the state habeas court with thorough briefing and exhibits, he provides this Court with only the cursory statement that the defense failed to call witnesses about "gunman violent, known to carry gun, and after Petitioner because angry with Petitioner." *Id*. Petitioner does not even name the witnesses he faults trial counsel for not calling, much less provide affidavits from those proposed witnesses or clarify the above statement with supplemental briefing. Indeed, Petitioner's second allegation appears to be an afterthought: "None of this or psychological evidence was presented at sentencing either." *Id*.

Under Rule 2(c) of the Rules Governing Section 2254 Cases, a petitioner is required to plead facts in support of his claims. Conclusory allegations do not state a claim for federal habeas corpus relief and are subject to summary dismissal. *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (holding "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding"); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (same). Petitioner's barebones allegations, unsupported by any argument or evidence from the record, are insufficient. *See Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) ("[A]bsent evidence in the record," a court cannot "consider a habeas petitioner's bald assertions on a critical issue in his

5

*pro se* petition . . ., unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.") (citation omitted).

### B.     The *Strickland* Standard

Nevertheless, the Court will review Petitioner's Sixth Amendment claims concerning the alleged ineffective assistance of trial counsel (IATC claims) under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced his defense.  466 U.S. at 687-88, 690.  According to the Supreme Court, "[s]urmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards.  *Strickland,* 466 U.S. at 687-89.  Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Burt v. Titlow*, 571 U.S. 12, 22 (2013) (quoting *Strickland*, 466 U.S. at 690).  To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  Under this prong, the "likelihood of a different result must be substantial, not just conceivable."  *Richter*, 562 U.S. at 112.  A habeas petitioner has the burden of proving both prongs of the *Strickland* test.  *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Finally, IATC claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1).  *See Gregory v. Thaler*,

601 F.3d 347, 351 (5th Cir. 2010).  Where, as here, the state court adjudicated the IATC claims on the merits, a court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d).  *See Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)); *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009).  In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standards," but whether "the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S at 101.  That is to say, the question to be asked in this case is not whether counsel's actions were reasonable, but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. at 105.

C.   **Analysis under *Strickland* and the AEDPA.**

During his state habeas proceedings, Petitioner alleged that his trial counsel, Robert Porter and Kelly Pittl, were ineffective for failing to call the following witnesses during the guilt/innocence phase of trial: (1) Diana Vogt, (2) Juanita Alvarado, (3) Richard Alvarado, and (4) Marciella Nuno.  According to Petitioner, these witnesses—all of whom are Petitioner's family members who testified on his behalf at the punishment phase—could have provided the jury with information about Steven Vargas's violent disposition and offered context to the circumstances surrounding the confrontation between Petitioner and Vargas on the night of the offense.  Petitioner also faulted counsel for not presenting the jury with psychological evidence at the punishment phase of trial.

In response, counsel submitted affidavits addressing Petitioner's assertions of ineffective assistance. (ECF No. 7-34 at 118-27).  The following is an excerpt from Mr. Kelly's affidavit:

> 7.   I will address the first allegation that I along with co-counsel Robert Porter failed to call witnesses to testify as to Steven Vargas approached the vehicle driven by [Petitioner].  Robert Porter and myself investigated Steven Vargas with the help of our investigator Jeff Mitchel.  At the time

       of trial we knew that Steven Vargas was convicted of sexual assault and we knew that Steven Vargas had a propensity for violence based upon his previous criminal history and from speaking with [Petitioner] and [Petitioner]'s family members. We were prepared to cross examine Steven Vargas should the state call him to testify but correctly assumed the state would not call him because he is not relevant to their case and he was awaiting trial on an aggravated assault with a deadly weapon and was represented by counsel. The state instead called Jacqueline Lopez who was Steven Vargas' girlfriend and was in Vargas' vehicle when he exited the car to approach [Petitioner]. We cross examined Jacqueline Lopez and attempted to elicit testimony regarding Steven Vargas' violent character and criminal history and the state objected and each objection was sustained as to relevance and improper impeachment. If we would have called Diana Vogt, Juanita Alvarado, Richard Alvarado and Maricella Nuno to testify regarding Steven Vargas, it is my belief that this testimony would not have been given to the jury because it is not allowed by the rules of evidence and would've been objected to as to relevance just like it was with Jacqueline Lopez. In relation to the contention that Steven Vargas was known to carry a gun with him, the video from the Dairy Queen at the traffic light does not show Steven Vargas with a gun in his hand and testimony from the four individuals that Steven Vargas was known to carry a gun is not relevant and not allowed under the rules of evidence. No gun was ever discovered on Steven Vargas and no evidence existed that Steven Vargas had a gun on the date of the offense. Lastly, [Petitioner]'s last contention that he believed the police were after Steven Vargas and not him is contradictory to what [Petitioner] told myself and Robert Porter in preparation for trial. In preparation for trial, [Petitioner] advised myself and Robert Porter that he was not afraid of Steven Vargas and that he left the scene because he wanted to get Maria Garcia home. If [Petitioner] believed the police were after Steven Vargas and not him then his actions in leaving the scene do not follow this belief.

8.     In his second allegation [Petitioner] alleges the defense did not present evidence of [Petitioner]'s psychological status in the punishment phase of the trial. There were four family members that testified during the punishment phase of the trial as well as [Petitioner]. At no time prior to their testimony did [Petitioner] or any of his family members including those that testified, state that [Petitioner] suffered from mental health issues. Based on communications with [Petitioner] it was never my belief that [Petitioner] suffered from psychological issues.

*Id.* at 126-27.

       The state habeas trial court found trial counsels' affidavits truthful and credible and concluded that counsels' strategic decision not to call Diana Vogt, Juanita Alvarado, Richard

8

Alvarado or Maricella Nuno at the guilt/innocence phase was reasonable. *Id*. at 129-34. The court also concluded that counsel were not ineffective in failing to present psychological evidence at punishment and, even if they were, the outcome of Petitioner's punishment phase would not have been different. These findings and conclusions were adopted by the Texas Court of Criminal Appeals when it denied Petitioner's state habeas application. (ECF No. 7-29). These determinations, including the trial court's credibility findings and finding that counsel's choices were strategic, are entitled to a presumption of correctness unless they lack fair support in the record. *Demosthenes v. Baal*, 495 U.S. 731, 735 (1990); *Miller v. Thaler*, 714 F.3d 897, 903 (5th Cir. 2013).

Petitioner fails to show that the state court's ruling on trial counsel's investigation and strategy was contrary to, or involved an unreasonable application of *Strickland* or that it was an unreasonable determination of the facts based on the evidence in the record. *Strickland* requires counsel to undertake a reasonable investigation. 466 U.S. at 690-91; *Charles v. Stephens*, 736 F.3d 380, 389 (5th Cir. 2013). Counsel must, at minimum, interview potential witnesses and make an independent investigation of the facts and circumstances of the case. *Kately v. Cain*, 704 F.3d 356, 361 (5th Cir. 2013). But in assessing the reasonableness of counsel's investigation, a heavy measure of deference is applied to counsel's judgments and is weighed in light of the defendant's own statements and actions. *Strickland*, 466 U.S. at 691. This wide latitude given to trial counsel includes the discretion to determine how best to utilize limited investigative resources available. *Richter*, 562 U.S. at 107 ("Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies.").

9

In this case, trial counsels' affidavits—adopted by the state habeas court and ultimately by the Texas Court of Criminal Appeals—explained that they were aware of Steven Vargas' propensity for violence but their attempts to bring this to the jury's attention were repeatedly thwarted. Counsel then explained that any attempt to present such evidence through the testimony of Petitioner's family members would have been similarly objected to, and sustained, as improper and irrelevant character evidence. Counsel also explained they did not pursue psychological evidence at the punishment phase because Petitioner showed no signs of having a mental health issue, and neither Petitioner nor any member of his family ever mentioned any psychological deficiencies.

Petitioner has not pointed to any evidence rebutting counsels' assertions, much less demonstrated that the state court's ruling on trial counsels' investigation and strategy "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Consequently, viewing these allegations under the deferential standard that applies on federal habeas review, Petitioner has not shown that the state court's decision was objectively unreasonable or that he is entitled to relief on his IATC claims. Federal habeas corpus relief is therefore denied.

## IV. Certificate of Appealability

The Court must now determine whether to issue a certificate of appealability (COA). *See* Rule 11(a) of the Rules Governing Section 2254 Proceedings; *Miller–El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)). A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If a district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the

constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 336 (citation omitted).

A district court may deny a COA *sua sponte* without requiring further briefing or argument. *See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000). For the reasons set forth above, the Court concludes that jurists of reason would not debate the conclusion that Petitioner was not entitled to federal habeas relief. As such, a COA will not issue.

## V. Conclusion and Order

After careful consideration, the Court concludes Petitioner has failed to establish that the state court's rejection of his allegations on the merits during his state habeas proceedings was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented during Petitioner's state trial and habeas corpus proceedings.

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Federal habeas corpus relief is **DENIED** and Petitioner George Munoz, Jr.'s § 2254 petition (ECF No. 1) is **DISMISSED WITH PREJUDICE**;

2. No Certificate of Appealability shall issue in this case; and

3. All other motions, if any, are **DENIED**, and this case is now **CLOSED**.

**SIGNED** this the __10th__ day of May, 2021.

                                              **ORLANDO L. GARCIA**
                                              **Chief United States District Judge**